## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| **CRAIG CUNNINGHAM,** **Plaintiff,** **v.** Bekstar, LLC and John/Jane Does 1-5 **Defendant** | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **Civil Case No.**   4:18cv658 |

## Plaintiff's Original Complaint

### Parties

1. The Plaintiff is Craig Cunningham and natural person and was present in Texas for all calls in this case in Collin County.

2. Bekstar, LLC is a Wyoming corporation operating from 30 N Gould St., ste R, Sheridan, WY 82801 and can be served via registered agent Registered Agents, Inc. at the previous address.

### JURISDICTION AND VENUE

3. <u>Jurisdiction</u>.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds

little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

4. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and the sell goods and services to Texas residents, including the Plaintiff.

5. This Court has specific personal jurisdiction over the defendants because the calls at issue were sent by or on behalf of Bekstar, LLC to Texas Residents, specifically the Plaintiff in this case.

6. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District. The Plaintiff was residing in the Eastern District of Texas when he recieved a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

7. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

8. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. §

227(b)(1)(A)(iii).

9.  The TCPA makes it unlawful "to initiate any telephone call to any residential

    telephone line using an artificial or prerecorded voice to deliver a message without

    the prior express consent of the called party, unless the call is initiated for emergency

    purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by

    the United States, or is exempted by rule or order" of the Federal Communication

    Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

10. The TCPA provides a private cause of action to persons who receive calls in violation

    of § 227(b). 47 U.S.C. § 227(b)(3).

11. Separately, the TCPA bans making telemarketing calls without a do-not-call policy

    available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

12. The TCPA provides a private cause of action to persons who receive calls in

    violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

13. According to findings of the FCC, the agency vested by Congress with authority to

    issue regulations implementing the TCPA, automated or prerecorded telephone calls

    are a greater nuisance and invasion of privacy than live solicitation calls and can be

    costly and inconvenient.

14. The FCC also recognizes that "wireless customers are charged for incoming calls

    whether they pay in advance or after the minutes are used." *In re Rules and

    Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014,

    14115 ¶ 165 (2003).

15. The FCC requires "prior express written consent" for all autodialed or prerecorded

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

16. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

17. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

18. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

19. A corporate officer involved in the telemarketing at issue may be personally liable

under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-

10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any

courts have held that corporate actors can be individually liable for violating the

TCPA where they had direct, personal participation in or personally authorized the

conduct found to have violated the statute." (internal quotation marks omitted));

*Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If

an individual acting on behalf of a corporation could avoid individual liability, the

TCPA would lose much of its force.").

### The Texas Business and Commerce Code 305.053

20. The Texas Business and Commerce code has an analogus portion that is related to the

TCPA and was violated in this case.

21. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or

subchapter A and seek $500 in statutory damages or $1500 for willful or knowing

damages.

### FACTUAL ALLEGATIONS

22. The Plaintiff recieved a total of 9 calls from 507-519-2037 to 615-331-7262 on

September 13 2018. The calls were listed as if they were coming from Panama on the

caller ID information and are detailed as follows:

| Date/Time | Type | Number | Duration | Direction | Network |
|---|---|---|---|---|---|
| 13/09/2018 6:43 PM | call | (507) 519-2037 | 12m 19s | inbound | cell |
| 13/09/2018 4:55 PM | call | (507) 519-2037 | 3s | inbound | cell |
| 13/09/2018 4:55 PM | call | (507) 519-2037 | 4s | inbound | cell |
| 13/09/2018 4:27 PM | call | (507) 519-2037 | 16s | inbound | cell |
| 13/09/2018 3:54 PM | call | (507) 519-2037 | 20s | inbound | cell |
| 13/09/2018 3:33 PM | call | (507) 519-2037 | 20s | inbound | cell |
| 13/09/2018 3:04 PM | call | (507) 519-2037 | 20s | inbound | cell |
| 13/09/2018 2:23 PM | call | (507) 519-2037 | 20s | inbound | cell |
| 13/09/2018 1:38 PM | call | (507) 519-2037 | 20s | inbound | cell |

23.  On information and belief, Bekstar, LLC used equipment that has the capacity to store or produce random or sequential telephone numbers to be called and that includes autodialers and predictive dialers (each an "automatic telephone dialing system" or "ATDS") to place each and every call.

24. The calls came in rapid succession, sometimes seconds apart and were placed faster than humanly possible. The calls also had a 3-4 second delay before a live person came on indicating that an ATDS was used to initiate each call. The Plaintiff spoke with an individual with an foreign accent as well that sounded like they were in the Philippines.

25. The callers were pitching "male enhancement" pills that are supposedly going to increase penis length, girth, and stamina. Another product offered was some sort of weight loss product. As part of an inquiry into the identity of the caller, the Plaintiff purchased the products which resulted in a charge on the Plaintiff's credit card from www.thin-quick.com and www.grown-manhood.com and both charges listed a phone number of 866-296-8094. According to the websites listed the address and entity involved are Bekstar, LLC, PO box 76122 Tampa, FL 33675.

26. At no time during the call was the calling party or Bekstar, LLC mentioned naming the party on whose behalf the calls were being placed.

27. At no time were any of the calls related to any emergency purpose.

28. At no time were any of the calls placed with the Plaintiff's prior express written consent.

29. Mr. Cunningham never consented to receive calls or texts from BEKSTAR, LLC  or Defendant Salame

30. Defendants never had any reason to believe that Mr. Cunningham had consented to receive calls or texts from it.

31. On information and belief, BEKSTAR, LLC bought Mr. Cunningham's phone number from a lead generator.

32. On information and belief, Defendants had no reason to believe that the lead generator had obtained Mr. Cunningham's prior express written consent to be contacted by Defendants.

33. Mr. Cunningham has a limited data plan. Incoming calls chip away at his monthly allotment.

34. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming calls from BEKSTAR, LLC consumed part of this capacity.

35. On or about February 4, 2017, BEKSTAR, LLC began sending calls to Mr. Cunningham's cell phone. The calls were initiated by an automated telephone dialing system. The calls continued through February 13, 2018. There were a total of 30 calls from 313-908-9166 to 615-348-1977.

36. The calls sent to Mr. Cunningham advertised BEKSTAR, LLC 's services as a sympathy ploy to sell $100 light bulbs under the guise as operating as a fake charity.

37. No emergency necessitated the calls

38. Each call was sent by an ATDS.

**Bekstar's Willful and knowing Violations of Telemarketing Regulations** 47 USC 227(c)(5)

39. The Plaintiff inquired with the agents of Beckstar, LLC if they had an Internal Do not call policy and if they could send the Plaintiff a copy.

40. BEKSTAR, LLC never sent Mr. Cunningham any do-not-call policy. Even after this litigation began, BEKSTAR, LLC did not sent Plaintiff a do-not-call policy.

41. On information and belief, BEKSTAR, LLC did not have a written do-not-call policy while it was sending Mr. Cunningham calls.

42. On information and belief, BEKSTAR, LLC did not train its agents engaged in telemarketing on the existence and use of any do-not-call list.

43. BEKSTAR, LLC 's calls did not provide Mr. Cunningham with the name of the individual caller or the name of the person or entity on whose behalf the call was being made.

**Violations of The Texas Business and Commerce Code 305.053**

44. The Texas Business and Commerce code has an analogus portion that is related to the TCPA and was violated in this case.

45. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages. The calls constituted 9 violations of the Texas Finance Code 305.053 and the Plaintiff should be awarded treble damages for willful and knowing violations.

**Corporate Executives Control over Bekstar, LLC Including its Illegal Robocalling and Telemarketing**

46. At all times relevant to the claims alleged herein, the Corporate officer for Bekstar, LLC was in charge of all day to day corporate operations. This is currently a John Doe defendant.

47. The Corporate officer was aware that Bekstar, LLC was sending automated, telemarketing text messages en masse to people, including Plaintiff, who had not

requested to be contacted by Bekstar.

48.  As BEKSTAR, LLC 's senior-most executive, Mr. Salame had the power to stop these spam campaigns.

49.  As BEKSTAR, LLC 's senior-most executive, Mr. Salame had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

50.  Instead, the corporate executive allowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages.

## I.  FIRST CLAIM FOR RELIEF

### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))

### (Against All Defendants)

1.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3.      Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.      Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1); [2]

b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2); [3] and,

c.      in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4). [4]

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

8.      Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10.      Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and BEKSTAR, LLC 's name in the solicitations.

### III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq.

13.      Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. **Texas Business and Commerce Code 305.053(b)**

14.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053**(c).

## IV. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against

Defendant BEKSTAR, LLC :

A.     Leave to amend this Complaint to name additional DOESs as they are

identified and to conform to the evidence presented at trial;

B.     A declaration that actions complained of herein by Defendants violate the

TCPA and Texas state law;

C.     An order enjoining Defendants and their affiliates and agents from

engaging in the unlawful conduct set forth herein;

D.     An award of $27,000  in statutory damages arising from the TCPA

intentional violations jointly and severally against the corporation and individual for 9

calls.

E.     An award of $13,500 in statutory damages arising from violations of the

Texas Business and Commerce code 305.053

F.     An award to Mr. Cunningham of interest, costs and attorneys' fees, as

allowed by law and equity

G.     Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,

Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075 9/14/2018